We'll turn now to Moore against Barr 19-2344, Mr. Mark Cillian-Pallender. Thank you, Your Honor. And may it please the Court, Richard Mark of Gibson, Dunn & Crutcher, for the petitioner Stephen Moore. In this case, the Board of Immigration Appeals erred when it concluded that Mr. Moore's plea a misdemeanor under New York law, is a crime involving moral turpitude. The BIA read the Fifth Degree Conspiracy Statute to be a divisible offense and used that to look past the elements of the conspiracy statute and considered whether the record showed other conduct by Mr. Moore that amounted to a crime involving moral turpitude. That look-through was error. Categorical analysis applies when the government relies on a prior conviction to prove a crime involving moral turpitude as a basis for removal. As the Court stated in James v. Mukasey, this Court, for convictions following a plea, the BIA may rely only upon facts to which a defendant actually and necessarily pleaded in order to establish the elements of the offense. It's those elements necessary for conviction, not the specific facts of any defendant's conduct, that determines whether the state statute defines a CIMT. We know this both from cases like James and particularly from Supreme Court authority like Mathis v. United States. Those cases put the statute of conviction at the center of the analysis. So the statute of conviction here, which we know from the certificate of disposition that appears at page 770 of the record, has two elements. It is conspiracy in the fifth degree, and it has these two, intent to commit conduct constituting a felony and agreement with one or more persons to perform that conduct. Neither of those elements is divisible. The intent element significantly relates to any felony in the New York penal law and thus encompasses crimes that do not require or rise to the level of a morally turpitudinous offense. For that reason, the statute is overbroad, and as the government notes at page 12 of its brief, if the overbroad statute is indivisible, the inquiry ends. That's what the BIA should have done here. Tells for divisibility. What we are describing here and what the Supreme Court emphasizes in cases like Mathis is that a statute is not divisible if the elements of the statute encompass different means of performing an offense and don't require different things to be proved or by the jury unanimously in order to establish a particular offense. So, for example, this court in the Harbin case decided in 2017, after Mathis, addressed the question of whether criminal sale of drugs sold knowingly and unlawfully was divisible or not, and the court held it was not, even though it encompassed sales of everything from a Schedule I to a Schedule V narcotic. If it's a Schedule I and it's heroin, one might have a particular view of the offense. If it was some high-class decongestant that was a Schedule V but perhaps not viewed with the same moral nature as heroin, it's the same offense. It did not matter which drug was sold in order to be guilty of 22031, sale of narcotics under New York State law. Similarly, the general conspiracy statute, New York Penal Law 105.05, any felony satisfies the intent requirement that is the first element of the offense, and we know that there are such felonies that are not crimes involving moral turpitude. Mr. Moore's notice to appear in this case specified a second one, hindering prosecution. The immigration judge decided that was not a crime involving moral turpitude, and that was a correct determination. It has never been challenged. So we have the certificate of disposition, again at page 770 of the record, which identifies solely 105.05 with no object crime as the basis of conviction. We have the notice to appear in this case, page 782 of the record, which again specifies for purposes of this element or this specification, 105.05 with no object crime specified. And so, again, what is actually and necessarily required in order to convict for that, I've already recited what those two elements are. The significance of this, of course, is that Mr. Moore pleaded guilty in this case, and undoubtedly the question arises whether the immigration court can go beyond the elements of the statute and survey other materials in order to address the crime involving moral turpitude question. And what the Mathis case teaches is that inquiry is treacherous and should not be engaged in. I would direct the court in particular to footnote three of that case and the text of the case, the text to which that footnote is appended. In particular, what the court observed there was that statements of non-elemental facts in the records of prior conviction are prone to error precisely because their proof is unnecessary. At trial and still more at plea hearings, a defendant may have no incentive to contest what does not matter under the law. And the court noted there that... Excuse me, you have a minute left. Thank you. Noted there in particular that the immigration context was one in particular where someone who, like Mr. Moore, had been in pretrial detention for two years, facing a much higher level offense charge than the indictment, when he is offered a Class A misdemeanor to get out for time served, which he had over-served, frankly, then he has no incentive to contest certain things and he'll just plead to get the deal there. What Mathis says is that can't be relied on for fact-finding. We have other arguments... I'm sorry, this is footnote three of Mathis, you're saying? Footnote three of Mathis, I believe... Let me find that, yes. That's the one that... Well, I guess footnote two addresses the immigration context specifically. Footnote three gives the example of a murder conviction with three different levels of intent in it and notes that it doesn't matter to the defendant at that point whether it's intentionally, knowingly, or recklessly, the person is simply going to plead. But it may have great consequence down the road if he is held to say, oh, you picked the wrong door here and that has consequences for CIMT, even though the other door would not have been a CIMT. You can't, after the fact, go back and ratchet up the penalty and treat Mr. Moore as if he committed a criminal indictment, which would have required showing an intent level to commit a class A felony, very different from any felony in this case, which is what he pleaded to. I was simply going to say, before I run out of my initial time, that we do have other arguments in the brief relating to the way fact-finding preceded and improper considerations that the IJ took into account. We do rest on points three and four of the brief for that. We also, as the court is fully aware, have an application for bail pending. I will be able to address questions on that if the court chooses. Thank you. Thank you, Mr. Moore. We'll hear now from Ms. Miles. Good afternoon, Your Honors. I'm Erica Miles for the Attorney General. Our position is stated pretty clearly in our brief is that binding precedence by this court in Santana-Felix and Mizrahi dictates that Moore was properly ordered removed for a crime involving moral turpitude based on his conviction for conspiracy to commit second-degree murder. So, therefore, I will just summarize our position here and add a couple points of emphasis to cede time so the court can ask questions. Here, we know that Mr. Moore does not dispute that second-degree murder is a crime involving moral turpitude. So, at bottom, for this court to agree with Mr. Moore that his conspiracy conviction is not a crime involving moral turpitude, it must agree with his contention that the object offense, second-degree murder, that the object is not an element of the offense that must be proven to sustain a conviction. But for this court to do that, it would necessarily violate its precedent in Mizrahi and Santana-Felix. And notably important, Santana-Felix was decided after Mathis and after Harbin. It even cites Mathis as to the proper methodology for doing the matching once you've identified the proper statute of conviction to employ the categorical approach. Here, however, as in Santana-Felix, you have to begin with identifying the proper statute of conviction to engage in that categorical matching. And Santana-Felix and Mizrahi both stand for the proposition and are not at all undermined that when it's an inchoate offense, like conspiracy here or solicitation in Mizrahi, that this court looks to the object offense. And its reasoning is that New York state law, including jury instructions, treatises, Supreme Court law, et cetera, all provide binding and conclusive authority that an inchoate offense, like conspiracy, is never a standalone offense. That the object is key. As the New York court has said, it's the raison d'etre of the agreement to commit an offense. There is an intent that the object offense, that murder, would actually be completed. So New York case law, as well as this court's decisions in Santana-Felix and Mizrahi, recognize that the courts must ascertain the object offense and use that object offense as the offense to conduct the matching, the categorical match between whether or not that is a removable offense or a crime involving moral turpitude. And then looking to the documents of conviction, yes, it's true that the one minute order sheet identifies only conspiracy. But we have the indictment and we have the plea colloquy and there's no ambiguity that the criminal judge assessed what the object crime was and got confirmation from Mr. Moore that murder was the object of the conspiracy. It cannot be standalone. It must be tethered to an object crime because you must also show an overt act. And that is a statutory requirement under 105.20, the overt act, which is inextricably linked with the object offense. That must be proven. And it was proven here and we have the plea colloquy and the indictment itself showing that the only offense identified as an object offense to which he pled under that specific indictment is second degree murder. And of course, finally, the misdemeanor status is irrelevant. This court has seen many times that sometimes legal impossibilities can come out as a basis for a plea agreement that that is acceptable for practical reasons. Here, a misdemeanor level of conspiracy to a class A1 felony of second degree misdemeanor is the object offense. But that's what the prosecution accepted as did the judge.  And a jury would have had to agree that murder was the object offense conspired to or the conviction could not be sustained. Finally, my last point as to the relief applications as stated in the brief, they were decided on alternative grounds. The board's review of discretionary determinations is de novo and the board explicitly stated that the two negative factors of his conviction for conspiracy to commit murder and his admitted 10 years of gang involvement were what outweighed his positive equities. It did not factor in the immigration judge's credibility determination. And therefore, and he has waived all of the other dispositive grounds of the board recognized when it was on appeal before the board as well for withholding and asylum and tax. So there really is nothing for this court to decide as to the denial of his application for relief or protection from removal. I do want to update the court quickly that he is being held in Etowah, which is a different facility than the Pine Prairie facility when we had the pleadings about bail and release. And in total, since February, there was only one COVID-19 case ever identified at Etowah. And that person is no longer there. And they undertook strict measures to ensure that that person was segregated from the population at Etowah. But I'm happy to answer any questions that the court might have in relation to the release application as well if the court chooses. Thank you, Ms. Miles. I'll turn to my colleagues. Judge Laurier, any questions? I do. Thank you very much, Judge Cabanas. Ms. Miles, I want to focus on the due process challenge and the immigration judge's reliance, at least on this record, it appears, on the allegations in the indictment to make certain adverse categorical determinations. And I take it that one of the things you say in your briefing and one of the things you just suggested during oral argument is that the BIA was not as self-affected by the IJ's reference to the allegations in the indictment. Is that correct? That's correct. And yet, I'm having a little trouble understanding that. Didn't the BIA also rely on inconsistencies between Mr. Moore's testimony and the indictment in its decision? Only in assessing whether or not the immigration judge's credibility assessment was clear error. But then at the very end of the board's decision, that's where it addressed as a matter of discretion whether or not it would affirm the denial of cancellation of removal. And that is where the board's review there is not for clear error. It's de novo. And the board explicitly articulated that it considered all the positive factors that he had presented but that his negative factors, namely, is the word that they used, his gang involvement, which he admitted to, and his conviction for conspiracy to commit murder and not even his other two convictions. Just those two negative factors alone. We also agree with the immigration judge that the respondent does not merit relief in the exercise of discretion based on factors including his gang activities and criminal conviction. But the gang activities, is that not part of what the immigration judge was relying on? To be fair, although the immigration judge relied on gang activities that were charged as crimes in those indictments, they also took testimony from him. So he fully admitted during his immigration hearing about his gang involvement with the Bloods for over 10 years. And that he was on the board of directors. That he was aware of them having committed murders and being involved in drug trafficking. So his testimony directly is what the board's getting at. And that was credited. He admitted to 10 years. Here's my problem, or if you have a question. And it's that the BIA appears to have relied on the same inconsistencies between Mr. Moore's testimony and the indictment. So it says, we are also not persuaded that the immigration judge erred by noting significant inconsistencies between the respondent's assertions regarding his criminal history and the portion of the criminal record, which suggests that the respondent had a more significant involvement in the criminal activities than the respondent acknowledged. I agree that the board... That is from the indictment, right? Yes, and that's the board's assessment. I'm saying... You agree what? Yes, that... I agree that that was from the indictment. Okay. But I'm... Then our decisions, and actually BIA decisions, have previously cautioned, as I think you know, precisely against relying on unproven allegations in an indictment, absent some additional corroboration. And you're referring to some testimony, but it's not quite this testimony. It's not quite what was alleged in the indictment, as I understand it. But as your adversary, Mr. Mark, pointed out, Mathis, in at least two footnotes, footnotes two and three, counseled against, and we have counseled against in Padmore and other cases, in the context of guilty pleas, where the defendant hasn't necessarily admitted or stipulated to every factual allegation, we have said, you can't answer the BIA. You cannot rely on these allegations in an indictment. And of course, that's not just in the context of immigration cases. That's sort of across the board. And I say this as a former federal prosecutor. So why aren't the IJ and BIA decisions here legal error under Padmore, Mathis, James, and so on? Let me address this. First of all, I was referring to, you have two contexts here. You have determinations of removability, and then you have determinations of relief from removal or protection from removal. In the removability context, you're right. You do not rely on allegations. You only rely on fact of conviction. And you ascertain what the statute of conviction is. And then you start undertaking the categorical approach, not the underlying facts and circumstances, not the indictment. And the board stuck to the proper approach, which is consistent with Mizrahi and Santana-Felix. It identified the conspiracy to commit murder as the object defense of the conviction for conspiracy. And then it determined that it is a categorical match to a crime involving moral turpitude. So the credibility, the adverse credibility holding by the IJ and then assessed by the board here is purely in the context of whether or not he qualified for asylum, withholding removal, CAT, or cancellation of removal. The board looked at the credibility determination, found no clear error, but to be clear, it had already dispensed with it because there were alternative bases on the merits, giving full credibility to his claims that the reasons for denying it for his failure to meet his burden under the statute and the regulatory requirements for those applications for relief and protection. So credibility, adverse credibility doesn't matter for all those three. As for adverse credibility as to cancellation of removal, the last one that it could possibly apply to, we have the board, despite affirming the adverse credibility determination for no clear error, it then proceeds to the final standard of as a matter of discretion. It conducted de novo review and in its own weighing of factors and assessments, which it says at the bottom, it looks at his positive factors and the negative factors of justice conviction for conspiracy to commit murder and his gang involvement, which he testified to and admitted to. Those two negative factors alone outweighed his positive equities. So that dispenses with cancellation of removal. So all of these findings, the alternate on the merits findings and this discretionary finding by the board de novo, entirely dispensed with all four of these applications for release and protection and entirely independent of any adverse credibility holding at all. Okay. Go ahead. Can I just jump? So even if they did consider materials in the indictment, Moore would also have to show prejudice, right? From that consideration, do you, do you have a separate argument that there's, he couldn't show prejudice? Uh, we didn't address that because again, you know, we're not talking about removability, you know, they didn't, they did not address indictments or anything like that as removability. They only looked at the fact of conviction for conspiracy and the object defense is to commit second degree murder. So I did not, he would, you were right to have a due process violation as to his applications to stay here, um, based on, you know, ground for asylum withholding cat or cancellation of removal. He would have to hear under his claims show he was prejudiced. Um, but we didn't get into that because our main argument is you don't need to look at anything he's saying about the adverse credibility determination because all four of those applications were dispensed with on independent grounds having nothing to do with the indictment or an adverse credibility determination whatsoever. Okay. I also have a question. If we, in the absence of Santana Felix, I'm, I'm also just struck that the INA itself in, um, 1182A2A1 says that you become inadmissible not just by, uh, being convicted of a crime involving moral turpitude, but also conspiracy to commit such a crime. Um, in the absence of Santana Felix, do you also think you think the statute would require consideration of the object crime? I, I do think it could, um, but I would, I would not want to give you a firm answer without having researched it and providing you, um, a letter brief or some sort on that because I would want to give that further thought because we are in the, we're in the categorical matching, but because here I'm defending the board's precedent and I'm also saying that under this court's precedent, um, you don't need to rely on the statutory term conspiracy because when it's an inchoate offense, which doesn't include, I think part of it is the statutory term doesn't include all of them. Um, I can't remember if solicitation is there or attempt or I know it's missing one of the inchoate offenses, but they still qualify because you go to the object is really sort of the legal theory behind it because it is an element. Yeah. Yeah, exactly. Um, I would, I would say that that is obviously a strong indicator that, um, that that is you start with the statute of convictions and you stick with only conspiracy that you, you would have to accept his premise that the object defense is not an element in order in order to agree with him. Well, I guess I have heard you say that, that, that the object defense, because the, the, the conspiracy statute says you have to commit an overt act toward the object offense. The object defense becomes an element, but the statute says, um, you know, conspiracy to commit a felony. So you have to commit an overt act toward a felony. So how do we know that the jury all has to agree on the particular felony as opposed to, um, that being considered a means by which you could, uh, you could violate the conspiracy statute. Yeah. Um, you know, both Ms. Rahi and especially Santana Felix, which again, I emphasize is a post-Mathis decision, but Santana Felix is dealing with conspiracy to commit second degree murder. The only difference of, um, the crime of conviction there is that it was second degree conspiracy instead of fifth degree, but it was talking about conspiracy universally. Um, and it relied on its reasoning in the Ms. Rahi case and both Santana Felix and Ms. Rahi rely on New York state law interpreting its own conspiracy statute requiring that the object defense needs to be identified. And in particular on Santana Felix to get, you know, to answer your question that a jury would have to agree. And Santana Felix on page 55, um, one of the reasonings that the court reached was that New York has a prohibition against duplicity, uh, which means that they must specify which object defense because, um, you know, they've overturned convictions where more than one object has been presented to a jury and then they cannot know for certain that the jury agreed on which object offense. So the, you know, Santana Felix has actually addressed your question and it has, um, and it is governing. If we were, if we were considering a state, I mean, I know it's not this case, but if you were considering a state that didn't have that particular requirement and said, as long as the jury agrees that there's an over act toward a felony, maybe one of the numerated felonies, or maybe just a felony, depending on how the statute is written, we'd have a different case. That would be quite possible. I am unaware of states that don't require, um, the object be specified and agreed upon or, you know, a judge must find that that was the object defense during a pleading stage because again, we're inextricably linked with the over act. Um, but I, I agree with you if it exists, then that would be a different case that would be before you. Thanks very much. Uh, does Laurier doesn't ask you any further questions for counsel for the government, Ms. Miles? Um, I'm sorry, uh, uh, just one quick question. Um, so Ms. Miles, uh, if the, if we were, just so that I understand the government's position, if the BIA had entirely adopted what BIJ had done, uh, in other words, um, the relying on the allegations in the indictment, uh, uh, to, uh, come up with its adverse credibility determination, uh, you would agree that that would be legal error, um, and that we should remand? No, because I did not rely on, I disagree because the immigration judge's adverse credibility finding does not relate to the assessment of removability. So I would say it's not, it's not legal error as to removability. So I'm just going to tab in this. It's not legal errors to removability. Um, but if, if you found, as you posed it, it, it would possibly be legal error as to whether or not he's eligible for asylum withholding removal cat or cancellation of removal. So there would be a limited remand for the application. Right, right, right, right. So that's, that's the, you just answered my second question. That would then be the, uh, remedy, so to speak, a limited remand, uh, for the correct application, uh, as to, um, asylum and so on. Yes. But, you know, as our position remains, there were numerous dispositive grounds for dispensing with those applications that have nothing to do with the credibility assessment. So I do not agree. Yeah. But that's, that is, I think you understand. I'm just trying to understand the legal position. Um, you're not conceding, you know, you're not conceding anything. It's just, uh, I want to make sure that I fully understand the government's position. Okay. Thank you. All right. We'll turn to Mr. Mark, who is reserved two minutes. Thank you, Your Honor. On the removability question, the government relies principally on the Mizrahi case and the Santana-Felix case. Mizrahi predates Mathis v. United States and therefore really, along with other similar authorities, Matter of Vaux, Matter of Gonzales-Romo, it does not set forth a proper categorical analysis. Santana-Felix, it is true, comes after the Mizrahi case. However, I believe there are a couple of material distinctions there. One, a matter of law, and the second, a matter of fact in the record. The legal question is, this, uh, the predicate offense in that case that was at issue was, um, conspiracy in the second degree. Okay? A much higher level offense than what Mr. Moore pleaded to. And significantly, in that case, uh, and we have this from looking at the record in that case, we know that the notice to appear specified convicted of the crime of conspiracy in the second degree with the underlying offense being murder in the second degree. In other words, the NTA took the position from the beginning that you had to look through and see the object defense. There is no similar thing here, either in the certificate of, um, the certificate of disposition or in the notice to appear. And second, significantly, the difference between second degree conspiracy and fifth degree conspiracy is material. The intent element for second degree conspiracy is that the person would have the intent to perform a class A felony. That we know for a fact, or as a matter of law, that any felony certainly includes many things that are not crimes involving moral turpitude. Any felony is the intent element for fifth degree conspiracy. Whether- Mr. Moore. Whether, um, yes. Mr. Moore, this is Jeff Lillian. You can go on if you want, but, um, I'm, as you could hear, focused on this other issue. Yeah. And I'm now wondering if it's worth focusing on that issue, um, relating to the IJ's reference to the allegations in the indictment. Uh, the government says, in effect, that the BIA washed away those sins to the extent that they were, uh, sins of the immigration judge. What's your response to that? I don't believe that the decision does. It is hard to parse out from these, um, whether the BIA's analysis does, uh, cleanse that. The findings, we believe, were inextricably infected by reference to improper materials, and the fact that the, those materials are not properly part of consideration, I believe- How am I, how, how, how am I to figure that out when you say, uh, I guess really completely infected, uh, such that, uh, uh, there is no way that the BIA would have arrived, that we can confidently say that the BIA would have arrived at the decision in the absence of this purported error. What in the language of the BIA's decision would lead me to believe that? Um, I think that the, the repeated references and treatment of Mr. Moore as if, in fact, he was convicted, practically as if he was convicted of, uh, 125.25 under New York State law, uh, is, is the tell for me. Um, and that it should be remanded for that, for that purpose. Um, the, um, that, I mean, that's all that I, that I can say about the, the opinion. The overriding presentation throughout from the government and the treatment by the, uh, decisional authorities, um, tends to go immediately to this, to this underlying fact and use it for improper purposes. Um, or, you know, the, the underlying issue that was put in the indictment and roving through the indictment to find material that becomes the basis for the decision. And so that's what we say was, would be improper on that school. Okay. I would know. Can I ask you a question about the argument you're making about Santana Felix a moment ago? Yes. Wasn't the argument you were making, weren't you dividing up the New York conspiracy statute, but you just said that you said previously that it's indivisible. I mean, is that, is what you said consistent with your arguments? And did it matter to the Santana Felix court that he was convicted of a different, uh, of conspiracy in a different degree? Um, yes. Thank you for that question. Um, I don't believe I was dividing up the, if you view the New York conspiracy statute as all of the sections, you know, from 105.0 to 105 point, whatever it is, you could say that's the disability. What I am treating as an individual, um, statement of what the elements of an offense are under New York state law is I'm saying 105.05 is conspiracy in the fifth degree. That's one offense. And we look at whether that is divisible or not. We do know from this camps that even if you were to say, okay, let's look at the, that section of the penal law and treat all, all those subsections as one big chunk of conspiracy. And are they divisible between them? What you would then ask is this camp says is you, you divide it down to a point to say, what are the elements in the statute that a jury must agree on in order to have conviction? And again, you don't look through the individual conduct. You say, what's the element in that? And so you would stop and say, it is different to have conspiracy in the second degree because the jury would have to agree that it was a certain level of, uh, a certain level of object offense. So then what do you do with what the government just said a moment ago that actually we know that in New York, the jury has to agree on the specific object defense as an element? Well, two things about that. I don't believe it is actually clear that that is the case. And I will give you as an example, the, uh, recognizing that is not exactly the same kind of, uh, crime as we've been talking about, but in people versus Goldsmith, which is cited in our brief, we have the, uh, person who was charged with burglary that requires entering a house with intent to commit a crime. And that's what the statute specifies. The state's theory in the case was that Mr. Goldsmith had entered the house with the intent to kidnap someone. During the trial, the kidnapping count was dismissed. And he argued at the end of the case that he therefore couldn't have been convicted of burglary because the state had the burden to show that he went in there to kidnap somebody and the court said, no, you can still be convicted. There was enough evidence in the record to show that you had the intent to commit some crime. And so that shows. So you're saying that if in New York, it would allow a conviction for conspiracy as long as the jury agrees that you took an overt act toward the commission of some type of felony, then that would be your argument. But, uh, but we did say in Santana Felix that that is not how the New York conspiracy statute works. In Santana Felix. I don't know that the issue had to be confronted directly because the type of felonies that are covered by second degree conspiracy. But did we rely, did the Santana Felix court rely on that? Did they say, well, here we know that they don't need to agree on what the object offense is. They just need to agree that it's above a certain level. And all of those would be crimes of, uh, involving moral turpitude. You're correct, Your Honor. That's not stated in the case. But again, one other, I would point again back to the record where the NTA actually put that in. So the key piece of evidence, OK, the certificate of disposition in the NTA, which you look at and say, what was the guy convicted of according to the record from New York state? You know, conspiracy to do X. And it specifies the X. That is not the case here. And the last point I would make on this, again, in terms of how carefully we have to consider Mathis. I know out of circuit authority is always a dangerous thing in talking to this court of appeal. But in the 10th circuit, this exact question was presented. There was a case before Mathis in which a conspiracy statute was held to be divisible. And they looked through the object crime. After Mathis, in the Jimenez case, which is cited in our brief, the 10th circuit acknowledged that Mathis had abrogated that opinion and that that analysis could no longer be relied on. That is why we say that the Mathis case is pivotal in how this particular question should be addressed. I don't think that we have found, frankly, any case where you can tell clearly from the record that the underlying offense was specified in the way it was here. Simply conspiracy, as stated in 105.05, without an object offense specified in either the certificate of disposition or the NTA. Right. But we have to decide not just what's specified, but what's necessarily decided. So if it turned out that we knew that a jury had to, in fact, had to agree on the object offense, then you would say, well, then that makes it an element. Right? You're just saying we don't know that. Yes. And that is correct. But again, I would point back to Mathis, the combo footnotes two and three. And it may also be that there are different circumstances that could be viewed in the context of a trial. After all, the reason why at a trial the evidence gets developed and a theory gets selected for that reason may have to do with reasons of due process in the trial. Notice to the defense of what issues are being raised and how you and how you prepare for that trial. None of that is at stake in the context of a plea. And therefore, as Mathis recognizes, other cases recognize the need for the defendant to be particular about, you know, what is this? And, you know, if I I think I'm agreeing to the to the bare minimum here is and, you know, do I do I have to do that? It's very different. I ask you the last question, which is just about the statute. Right. So as I said, as I said to the government, the INA makes somebody inadmissible, not just for having been convicted of a crime involving moral turpitude, but also an attempt or conspiracy to commit such a crime. So isn't Congress telling us that we need to look to whether somebody conspired to commit such a crime? And how would you apply that statute under your theory? I think that in the end would not make a difference to the analysis that I am presenting here because the evidence of whether of whether you could could meet that part of the statute would be you'd look back to the same kind of evidence that the government always has to put in to establish what it would have. We're getting rid of this. It has the state has separate statutory offenses for conspiracy to commit certain object crimes. It doesn't have a general conspiracy. Yeah. Sure. But New York has a general one and Connecticut does. So there may be a lot of states where somebody could not be rendered inadmissible because of a conspiracy to commit a crime involving moral turpitude. Right. Correct. I would go back to the NTA and again highlighting the difference between something like the NTA and Santana Felix and the one in this case. Take the the language of the statute that your honor quoted. If the government wants to say you are movable because you engage in conspiracy to commit X crime. That's what the NTA ought to say. And it does say that when the government proceeds on that basis. It didn't say that here. So I don't think that basis is available. OK. Thank you very much your honor. And we ask that the petition be granted for the reasons stated in this case. Thank you very much. We appreciate the arguments on both sides, which has been excellent and return and will reserve decision.